S.S., a minor, by and through his Parents and Next Friends, James and Carol STUTTS, Plaintiff,

v.

**EASTERN KENTUCKY UNIVERSITY, et al., Defendants.**

No. CIV.A. 5:03–20–JMH.

United States District Court, E.D. Kentucky, at Lexington.

Jan. 23, 2004.

Katherine S. Sanford, Katherine K. Yunker, Yunker & Associates, Lexington, KY, for Plaintiff.

Joshua Michael Salsburey, Patricia T. Bausch, Stephen L. Barker, Sturgill, Turner, Barker & Maloney, PLLC, Lexington, KY, for Defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This action is before the Court on Defendants' motion for summary judgment [Record No. 25]. Plaintiff has responded [Record No. 34], and Defendants have replied [Record No. 35]. The Court notes that Plaintiff has requested oral argument on this motion [Record No. 34]. The Court does not believe that it is necessary and the request shall be denied. Accordingly, this matter is ripe for decision.

## I. FACTUAL BACKGROUND

At the time this case was filed, Plaintiff was a student enrolled at the Model Laboratory Middle School (hereinafter, the "Model School").[1] Plaintiff has since withdrawn and enrolled at another school. He has been diagnosed with cerebral palsy, attention deficit/hyperactivity disorder, dyslexia, pervasive developmental disorder, and post traumatic stress disorder. As a result of his physical and mental disabilities, his education was directed by an Individual Education Plan (hereinafter, "IEP") developed by the Admissions and Release Committee (hereinafter, "ARC") at the Model School. Defendant Vance serves as the Director of the Model School. Defendant Rini is the Model School's psychologist.

S.S.'s parents participated in the development and evaluation of his IEP, attending every meeting of the ARC. His IEP addressed educational considerations, speech/language and physical therapy, and his social interactions with faculty and other students. At each meeting, those present signed documents indicating that they were aware of their parental rights under the Individuals with Disabilities Education Act (hereinafter, the "IDEA"), waiving an explanation of those rights.

While a student at the Model School, Plaintiff alleges that he and his parents complained that other students threw urine-soaked paper towels at him in the bathroom, threw bleach at him in the chemistry lab, assaulted him in the halls and the library, grabbed his genitals in the boys' locker room, "extorted" money from him, and called him a "mental retard," "gay," and "queer" because of his disabilities. In spite of their complaints, he alleges that the school failed to protect him and put an end to the abuse and harassment. As a result, he claims that he developed numerous anxiety-related disorders and was effectively deprived of "a fair and equitable education." [Complaint at ¶ 5.] He also complains that, because of his disability, school officials did not want him to participate on the baseball team and suspended him for his own misconduct or otherwise excessively punished him for relatively minor infractions of school rules when other students were not punished to his satisfaction for his alleged mistreatment at their hands. Finally, he alleges

---

1. The Model School is operated by Defendant Eastern Kentucky University (hereinafter, "EKU") to train student teachers under the supervision of certified teachers.

that Rini failed to take into account a diagnosis of post traumatic stress disorder when formulating his educational program and that she denied that bullying and harassment were a problem for S.S. during an ARC Meeting.

Count I, II, and III of Plaintiff's complaint allege violations of his rights as a disabled person by EKU, Vance, and Rini, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, which provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. Counts IV, V, and VI allege an intentional violation of his rights as a disabled person by EKU, Vance, and Rini, under the Rehabilitation Act of 1973, 29 U.S.C. § 794, which requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of, or be subjected to discrimination by any such program or activity receiving federal financial assistance.

Count VII alleges deprivation of Plaintiff's constitutional rights of due process and equal protection under a Fifth and Fourteenth Amendment to be free from harassment, physical abuse, and discrimination in violation of 42 U.S.C. § 1983, specifically stating that:

> The Individuals With Disabilities Education Act, 20 U.S.C. §§ 1400–1406, requires all schools to provide disabled students with a free and adequate public education, and to that end, to develop an individual education program for each disabled student. These duties created a special relationship between the Plaintiff and the Defendants. In turn, such special relationship creates a duty on the part of the named Defendants to protect the Plaintiff from harassment, physical abuse, and discrimination by reason of his disability.

[Complaint at ¶ 96.]

Finally, Counts VIII and IX allege tortious failure to protect S.S. from harassment, physical abuse, and discrimination and outrageous conduct, both in violation of the law of the Commonwealth of Kentucky.

## II. APPLICABLE STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. FEDERAL CLAIMS

1. **PLAINTIFF'S CLAIMS UNDER THE ADA, THE REHABILITATION ACT OF 1973, AND 42 U.S.C. § 1983 ARE SUBJECT TO THE ADMINISTRATIVE EXHAUSTION REQUIREMENTS OF THE IDEA, 20 U.S.C. § 1415**

The IDEA seeks:

...to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living.... [and]

to ensure that the rights of children with disabilities and parents of such children are protected...

20 U.S.C.A. §§ 1400(d)(1)(A) & (B).

In order to achieve these goals, the IDEA prescribes certain procedural safeguards, including administrative hearings as provided for under state law.[2] 20 U.S.C. § 1415(f). Only upon exhausting the available administrative process may a party who is dissatisfied with the outcome of those administrative proceedings bring suit in state or federal court. 20 U.S.C. § 1415(i)(2); *see Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir.1989). The Act clarifies that:

Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [subchapter II of the IDEA], the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).

■ It is common sense that "a disabled child who asserts a constitutional claim having some relationship to education but no nexus to the IDEA is not required to pursue administrative remedies under the IDEA before filing suit under § 1983...." or other applicable law. *Franklin v. Frid*, 7 F.Supp.2d 920, 925 (W.D.Mich.1998). This Court finds that § 1415, however, requires the exhaustion of administrative remedies prescribed under the IDEA, even when the plaintiffs do not rely on the IDEA as the source of their claims, if their claim is sufficiently related to "free appropriate public education" to a disabled child under the IDEA. *Covington v. Knox County School System*, 205 F.3d 912, 916 (6th Cir.2000) (*citing N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir.1996); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2nd Cir. 1987); *Hayes Through Hayes v. Unified School Dist. No. 377*, 877 F.2d 809, 813–14 (10th Cir.1989); *Franklin*, 7 F.Supp.2d at 922, 925–26; *W.L.G. v. Houston County Bd. of Educ.*, 975 F.Supp. 1317, 1328 (M.D.Ala.1997); *Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F.Supp. 361, 364–65 (W.D.Mich.1990)). The Seventh Circuit Court of Appeals has aptly explained the theory behind this requirement as follows:

[U]nder the IDEA, education professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls. That the educational problem has consequences outside school...can't be enough to avoid the statutory system.

*Charlie F. v. Board of Education of Skokie School District*, 98 F.3d 989, 992 (7th Cir. 1996).

■ In determining whether relief is available under the IDEA where claims are brought pursuant to other statutes, courts have looked to the nature of the wrongs alleged. Complaints concerning

2. In Kentucky, parents may lodge a formal written complaint with the state Department of Education to enter into mediation with the school or to request a due process hearing.

the general disciplinary practices of a school district have been understood to relate to the way that the district provides education and "thus necessarily come within the scope of the IDEA." *Covington*, 205 F.3d at 916 (*citing Hayes*, 877 F.2d at 812–13; *Moore v. Harriman City Schools*, No. 92–5572, 1994 WL 18021, at *1 (6th Cir.Jan.21, 1994); *Waterman*, 739 F.Supp. at 365; *Pullen v. Botetourt County Sch. Bd.*, No. 94–686–R 1995 WL 738983, at *4 (W.D.Va. Feb. 13, 1995)).[3] By contrast, allegations of physical assault or sexual abuse of a student by a school staff member or administrator would fall outside of the scope of the IDEA since they are not related to the way that a school provides education. *See Franklin*, 7 F.Supp.2d at 925–26 (concluding that despite allegations of a school official's intentionally humiliating, poking, hitting, slapping, and verbally abusing a student, the "gravamen of the claim" fell within the purview of the IDEA, requiring exhaustion) (*citing Campbell v. Nye County Sch. Dist.*, No. 94–15747, 1995 WL 597706, at *2 (9th Cir. Oct.10, 1995) (mem.op.) (finding that § 1983 claim for compensatory damages based upon beatings of children by school personnel could not have been brought under the IDEA where plaintiffs did not claim beatings were disciplinary in nature and beatings could not have been discipline under Nevada law prohibiting corporal punishment in schools); *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir.1987) (recognizing substantive due process claim based upon corporal punishment which demonstrates "a brutal and inhumane abuse of ... official power, literally shocking to the conscience")).

Accordingly, this Court must determine whether the actions alleged by Plaintiff may best be understood as part of how the Model School provides education, or whether they are the type of abusive *ultra vires* acts by teachers or school administrators that lie outside of the IDEA's scope. The Court notes that most of the allegations arise from decisions by Vance, Rini, and others to discipline or not discipline Plaintiff or other students at the Model School. A portion of his complaint against Rini alleges that she failed to appropriately design an IEP for him based on his disabilities. Further, his complaint cites a duty to him arising from Defendants' special relationship to him as a student with a disability, an obligation addressed by the IDEA. At no time does he suggest that he was physically abused, assaulted, or even subjected to corporal punishment of any kind by a member of the faculty or staff of the Model School.

The Court understands his claims as complaints about the way that the Model School provided an education to S.S. Thus, the Court is not persuaded that Plaintiff's claims are concerned with behavior by EKU, Vance, and Rini constituting constitutional and statutory violations independent of the IDEA. Accordingly, the Court finds that Plaintiff's federal claims under the ADA, the Rehabilitation Act of 1973, and 42 U.S.C. § 1983, are not yet suitable for review in this Court unless he has exhausted those administrative remedies available to him under the IDEA.

## 2. PURSUIT OF REMEDY UNDER IDEA NOT FUTILE AND REMEDY NOT INADEQUATE

■ There has been no attempt by or on behalf of Plaintiff to pursue the administrative remedies available to him under

---

**3.** The Court remarks that the Sixth Circuit Court of Appeals did not actually decide whether the claims before it would come within the scope of the IDEA as the pursuit of the administrative procedures would have been futile in the *Covington* case. Nonetheless, this Court is persuaded by the logic described in the Court's discussion of the issue.

the IDEA. Nonetheless, exhaustion of administrative remedies under the IDEA is not required if (1) it would be futile or inadequate to protect the plaintiff's rights or (2) if the plaintiff was not provided full notice of their procedural rights under the IDEA. *Covington*, 205 F.3d at 917. As the parties do not dispute that Plaintiff was provided with full notice of his procedural rights under the IDEA, the Court is left to consider whether pursuit of the administrative process would be futile or inadequate to protect Plaintiff's rights.

■ First, the pursuit of remedies under the IDEA was not rendered futile by his unilateral decision to withdraw from the Model School. *See Torrie By and Through Torrie v. Cwayna*, 841 F.Supp. 1434, 1442 (W.D.Mich.1994) (student moved out of school district) (*citing Doe By and Through Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir.1989) (EHA)); *cf. Covington*, 205 F.3d at 918 (pursuing administrative process under IDEA would be futile where student had already graduated and could not receive relief available under IDEA).

■ Further, his obligation to pursue and exhaust administrative remedies is not excused as futile simply because he seeks a damage award not available under the IDEA, nor are those remedies available under the IDEA considered inadequate simply because they do not provide all of the remedy that is available to Plaintiff under other federal schemes. The Sixth Circuit Court of Appeals has discussed this issue as follows:

> [M]ost courts have held that a plaintiff seeking money damages is required to exhaust administrative remedies under the IDEA, even if money damages are not available under the IDEA or through the administrative process.

*See, e.g., [Charlie F., 98 F.3d at 991–93];* *Doe v. Alfred*, 906 F.Supp. 1092, 1098 (S.D.W.Va.1995) (noting that "a clear majority of courts hold exhaustion necessary despite the assertion of a contemporaneous § 1983 claim for damages"), *appeal dismissed*, 79 F.3d 1141, 1996 WL 119967 (4th Cir.1996); *Waterman*, 739 F.Supp. at 364–66. The rationales for requiring exhaustion even when the plaintiff seeks money damages are that plaintiffs could otherwise circumvent the IDEA's elaborate scheme simply by appending a claim for damages, *see Waterman*, 739 F.Supp. at 365, and that the administrative process might ultimately afford sufficient relief to the injured party, even if it is not the specific relief that the plaintiff requested, *see Charlie F.*, 98 F.3d at 991–93.

*Covington*, 205 F.3d at 916–17. Thus, it is clear to this Court that a plaintiff seeking money damages is required to exhaust administrative remedies under the IDEA, even if money damages are not available under the IDEA or through the administrative process.[4] As Plaintiff has not pursued those administrative remedies available to him or otherwise demonstrated that they would be futile or inadequate, his claims in Counts I, II, III, IV, V, and VI shall be dismissed.

## B. COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

28 U.S.C. § 1367(c) provides that a district court:

> ...may decline to exercise supplemental jurisdiction over a claim under subsection (a) if... (3) the district court has

---

4. In any event, Plaintiff may still seek this relief, if appropriate, at such time as he has pursued and exhausted the administrative requirements of the IDEA. *See* 20 U.S.C. § 1415(*l*).

dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367(c). In this matter, the Court has dismissed all of Plaintiff's claims made under federal law and over which it had original jurisdiction. The Court now declines to continue exercising supplemental jurisdiction over his state claims. These claims shall be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set out above, Plaintiff's request for oral argument shall be denied, Defendants' motion for summary judgment shall be granted, and Plaintiff's claims shall be dismissed.

Accordingly, **IT IS ORDERED**:

(1) that Plaintiff's request for an oral argument [Record No. 34] be, and the same hereby is, **DENIED**;

(2) that Defendants' motion for summary judgment [Record No. 25] be, and the same hereby is, **GRANTED**; and

(3) that all of Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

## JUDGMENT

In accordance with the Court's order of even date and entered contemporaneously herewith,

**IT IS HEREBY ORDERED:**

(1) That this action be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET**;

(2) That all pending motions be, and the same hereby are, **DENIED AS MOOT**; and

(3) That all scheduled proceedings be, and the same hereby are, **CONTINUED GENERALLY**.